Apple Inc., v. Paul S. Devine, et al

COMPLAINT

# EXHIBIT A

# Apple Inc 컨설팅 서비스 계약서

계약 당사자

    위탁자 "갑" : 나   진 / 크래신 주식회사
                / 212-81-20189
                /서울 서초구 잠원동 8-22

    수탁자 "을" : Paul Devine / ID no. : 217190104
                /주소지 :  683 Montara Terrace Sunnyvale, CA 94085 USA

상기 위탁자 "갑"과 수탁자 "을"은 갑에 대한 제품 판매 목적의 시장정보 제공과 영업 활동 지원에 관하여 다음과 같이 컨설팅 서비스 계약을 체결한다.

제1조 [목적]
본 계약은 "을"이 "갑"의 생산 제품을 Apple Inc 고객에 대한 판매 및 영업지원 컨설팅 서비스를 제공하여 "갑"의 기업활동을 지원함을 목적으로 한다.

제2조 [서비스의 수단]
1) 컨설팅 서비스는 온라인을 통해서 수행함을 기본으로 한다.
2) 온라인이란 인터넷, 전화, e-mail, 편지 등 기타 대면 접촉없는 통신수단을 의미한다.

제3조 [서비스의 내용]
  1. 액서서리 제품 개발 & 지원
    A. Apple 제품 Road-map 제공 ( Phone, MP3, Video 기타)
    B. 상기 언급된 제품군에 대한 물량 forecast 정보
    C. 액서서리 제품군에 대한 Road-map (Earphone, Bluetooth, Charger, Docks 기타) 제공.
    D. 상기 액서서리 제품에 대한 물량 forecast 제공
    E. 제품 목표가격 제공
    F. 제품에 대한 중요한 치수 dimension
    G. 제품 색상 사양 및 선택 관련 제공
    H. 제품 대한 재질,선택 (사출, 알루미늄, stainless. Steel 등…)
  2. I-POD 제품군에 대한 관련 contact point 및 관계인맥
    A . I-POD 제품에 대한 제품 Road-map

B. 제품에 대한 물량 forecast
C. 액서서리에 대한 road-map (이어폰, Bluetooth ,charger ,docks )
D. 액서서리 대한 물량 forecast
E. 제품에 대한 중요한 치수 dimension
F. 제품 색상 시방 및 선택 관련 제공
G. 제품 대한 재질,선택 (사출, 알루미늄, stainless. Steel 등...)
H. 제삼자에 ( foxcon.. EMS) 의해 핸드링 되는 액서서리 관련한 APPLE팀과의 소개 미팅 주선.
I. 제삼자에 ( foxcon.. EMS) 의해 핸드링 되는 액서서리 관련한 APPLE팀과의 소개 미팅 주선.
J. 제삼자에 ( foxcon.. EMS) 의해 핸드링 되는 액서서리 관련한 APPLE팀과의미팅 Follow-up
K. 경쟁사 target price 정보제공.
l. 승인 진행 과정에 대한 update .
M. 강점 , 약점에 대한 지침
N. 경쟁업체에 대한 승인진행 상황 update

3.I-pod 번들 제품 대한 관련 contact point 및 관계인맥
A. I-POD 번들 제품군에 대한 개발 Road-map
B. I-POD 번들 제품군에 대한 물량 FORECAST
C. I-POD 번들 액서서리에 대한 개발 Road-map
D. 상기 제품에 대한 물량 FORECAST
E. 제품에 대한 중요한 치수 dimension
F. 색상 시방 및 선택 관련 제공.
G. 대한 재질,선택 (사출, 알루미늄, stainless. Steel 등...)
H. 번들 이어폰에 대한 소개 APPLE팀과 소개미팅 (headset, bluetooth, charger,case, e/mic....)
I. 번들 제품에 대한 경쟁사 Target 가격 제공.
J. 번들 제품에 대한 경쟁사 물량 forecast
k. 승인 진행 관련한 update
l. 장점 , 약점에 대한 지침
M. 경쟁사 승인 진행상황 update

제4조 [서비스와 계약의 관계]
"을"은 "갑"의 컨설턴트로서 제1조의 목적과 관련한 컨설팅과 이것이 효과적으로 실행될

수 있도록 지원하는 것을 목적으로 하며 특정 사안의 성사를 조건으로 하지 않는다.

제5조 [계약일 및 계약기간]
1) 계약일은 2007년 3월 1일로 하며, 계약의 효력은 계약일로부터 발생한다.
2) 계약 기간은 12개월로 한다
3) 크레신에서 2008년 3월1일 이전에 계약 종료를
   할 경우 조기 계약종료에 따른 3개월 컨설팅 비용에 해당 하는 15,000불을 지불 할 것
   로 동의한다.
4) 쌍방이 계약 만료 1개월 전에 계약 연장에 대하여 합의한 경우 계약을 연장할 수 있다.

제6조 [서비스의 대가]
"갑"은 "을"에게 서비스의 대가로서 컨설팅료를 지급한다.

제7조 [컨설팅료]
1) "갑"은 "을"에게 매월 세금 포함 US$6,000 지급하며, 현지 세법에 따른 세금의 신고와
   정산은 을의 책임으로 한다
2) 컨설팅료의 지급은 매월 지정 된"을"의 은행구좌로 송금 지급한다.

제8조 [비용의 부담]
"을"은 "갑"의 컨설팅업무를 수행함에 있어 "갑"의 사전 승인 하에 발생한 출장경비의 비용
을 청구할 수 있다.

제9조 [업무수행 방법 및 비밀유지]
1) "갑"은 본 계약기간동안 "을"의 계약 및 컨설팅 업무 이행 과정을 제3조의 4)항에 따른
   보고를 포함한 다양한 방법을 통하여 수시로 검토할 수 있다.
2) "을"은 "갑"이 업무보고서에 특정 사항에 대한 검토 의견 첨부를 요청하면 이에 응하여
   야 한다.
3) "갑"과 "을" 쌍방은 원활한 업무수행을 위하여 상호협조하며, 일방은 타방으로부터 업
   무수행에 필요로 하는 제반자료나 업무를 요청 받을 경우 적극 협조하여야 한다.
4) 본 계약기간 동안 및 본 계약 종료 후에도 "을"은 컨설팅 업무를 통해 입수하거나 교환
   한 "갑"의 업무기밀정보에 대하여 비밀을 유지하며, "갑"의 사전승인 없이 다른 목적으
   로 사용하거나 제3자에게 공개 또는 유출하지 아니한다.
5) "을"이 고의 또는 중대한 과실없이 제3자의 해킹 등에 의해 인터넷 웹페이지상의
   "갑"의 정보가 유출 또는 멸실 된 경우, "을"은 그에 대한 책임을 지지 아니한다.
   단, 이 경우 "을"은 고의 또는 중대한 과실이 없음을 "갑"에게 서면으로 증빙자료와
   함께 제출하여야한다

6) "을"이 앞의 4, 5항을 위반하여 "갑"이 손해를 입었을 경우 "을"은 이를 "갑"에게 배상하여야 한다


제10조 [계약불이행으로 인한 계약의 해지]
1) 쌍방이 본 계약서의 계약내용 불이행으로 인한 계약의 해지는 1개월의 기간을 정하고 상대방에게 해지에 대한 의사를 통고를 한 후 기간 내에 계약을 이행하지 않을 경우 그 기간이 경과하면 해지의 효력이 발생된다.
2) 전 항의 계약의 해지는 손해배상 청구에 영향을 미치지 아니한다.

제11조 [계약서의 보관]
계약서는 2부를 작성하여 "갑"과 "을"이 1부씩 보관하기로 한다.

제13조 [위임의 법리 적용]
본 계약서에 없는 내용은 민법상 위임의 법리 및 판련 법규에 따른다.

제12조 [관할법원]
본 계약에 관한 분쟁의 관할법원은 "갑"의 본점 소재지 관할법원으로 한다.
단, "갑"의 소재지에서 소를 취하는 것이 실익이 없을 경우 "을"의 소재지 관할법원에 소를 제기할 수 있다.


위임인(갑)   사명 : 크레신 주식회사
           사업자등록 번호 : 212-81-20819
           대표이사 : 나   진   (인)


수입인(을)   ID No. : 217190104
주소지 : 683 Montara Terrace Sunnyvale, CA 94085 USA
성   명 : Paul Devine   (인)

Jacki J. Noh
California State Certified Court Interpreter
English ⇔ Korean (I.D. Number 300150)
555 Pierce Street, # 845F, Albany, CA 94706-1008 USA
Tel: (510) 527-6300    Fax: (510) 527-6700
jacki@transkorean.com; www.transkorean.com

# CERTIFICATE OF TRANSLATION ACCURACY

STATE OF CALIFORNIA    )
                       )   SS:
COUNTY OF ALAMEDA      )

This is to certify that the attached document, "Apple Inc. Consulting Services Agreement (2007 – 2008)" is a true and accurate translation into English of the original Korean-language document (file name: 02-15-07 Email Ref 2230 RE Proposal.doc) to the best of my knowledge and belief.

Jacki J. Noh
California State Certified Court Interpreter
ID #: 300150
May 23, 2010

# Apple Inc. Consulting Services Agreement

Parties to the Agreement
    Client ("A"): NAH Jin / Cresyn Co., Ltd.
               / 212-81-20189
               / 8-22, Jamwon-dong, Seocho-gu, Seoul
    Consultant ("B"): Paul DEVINE / ID no. : 217190104
               / Address: 683 Montara Terrace Sunnyvale, CA 94085 USA

This Consulting Services Agreement is hereby entered into by and between the above Client "A" and Consultant "B" for the purpose of market information and support for sales activities provided by "B" to "A".

### Article 1    Purpose

The purpose of this agreement is that "B" provides consulting services to support the sale of products manufactured by "A" to Apple Inc. customers, thus supporting the business activities of "A".

### Article 2    Means of Services

1) The consulting services shall be fundamentally provided on-line.
2) "On-line" means Internet, phone calls, e-mails, letters, and other communication methods without face-to-face contact.

### Article 3    Details of Service

1. **Accessory products development and guidance**
   A. Provide road map of Apple products (phone, MP3, video and others).
   B. Forecasting information on the volume of above family of products.
   C. Provide road map of the accessory family of products (earphones, Bluetooth devices, chargers, docks and others).
   D. Provide volume forecasts of the above accessory products.
   E. Provide target prices of such products.
   F. Provide significant dimensions of the products.

1

   G. Provide information about product color specifications and selection.
   H. Selection of product materials (injection molding, aluminum, stainless steel, etc.).

2. **Points of contact and people related to the I-POD family of products**
   A. Road map of I-POD products.
   B. Volume forecasts of these products.
   C. Road map of accessories (earphones, Bluetooth devices, chargers, docks).
   D. Volume forecasts of these accessories.
   E. Significant dimensions of the products.
   F. Provide information about product color specifications and selection.
   G. Selection of product materials (injection molding, aluminum, stainless steel, etc.).
   H. Arrange a meeting to brief the Apple team regarding accessories to be handled by third parties (foxcon, EMS).
   I. Arrange a meeting to brief the Apple team regarding accessories to be handled by third parties (foxcon, EMS). [sic]
   J. Follow-up on the meeting to brief the Apple team regarding accessories to be handled by third parties (foxcon, EMS).
   K. Provide information about competitors' target prices.
   L. Updates on the progress of approvals.
   M. Guidance with respect to strengths and weaknesses.
   N. Provide updates on competitors' progress in terms of approvals.

3. **Points of contact and people related to the bundled products for I-POD**
   A. Development of road map of the bundled family of products for I-POD.
   B. Volume forecasts of the bundled family of products for I-POD.
   C. Development of road map of the bundled accessories for I-POD.
   D. Volume forecasts of the above products.
   E. Significant dimensions of the products.
   F. Provide information about product color specifications and the selection.
   G. Selection of product materials (injection molding, aluminum, stainless steel, etc.).
   H. Meeting to brief the Apple team regarding bundled ear-phones (headsets, Bluetooth devices, chargers, cases, e/mics, etc.).
   I. Provide competitors' target prices on bundled products.
   J. Volume forecasts of the bundles products.

K. Updates on the progress of approvals.
L. Guidance with respect to strengths and weaknesses.
M. Update on competitors' progress in terms of approvals.

**Article 4      Relationship between the Services and the Agreement**

The purpose of this Agreement is that "B" as the consultant of "A", shall provide consulting services related to the purpose set forth in Article 1 and support in order to accomplish said purpose effectively, but it is not a condition of the Agreement that "B" is responsible for performing successfully.

**Article 5      Date and Term of the Agreement**

1) The date of the Agreement is March 1, 2007, and this Agreement shall become effective on the date of the Agreement.
2) The term of the Agreement is 12 months.
3) If Cresyn terminates the Agreement prior to March 1, 2008, Cresyn hereby agrees to pay US$15,000 equivalent to three months of consulting expenses effecting early termination of the Agreement.
4) The Agreement may be extended if both parties agree to do so one month prior to lapsing of the Agreement.

**Article 6      Price of the Services**

"A" shall pay to "B" the consulting fee as the price for the services.

**Article 7. Consulting Fee**

1) "A" shall pay to "B" US$6,000 monthly gross, and "B" shall be responsible for tax obligations and filing tax returns pursuant to local tax laws.
2) The consulting fee shall be remitted for payment on a monthly basis to the bank account designated by "B".

**Article 8      Bearing of Costs**

"B" may claim reimbursement of travel expenses incurred in carrying out the consulting work for "A" with the prior approval of "A".

3

**Article 9    Method of Work Performance and Confidentiality**
1) During the term of this Agreement, "A" may review "B's" process for the fulfillment of the Agreement and the consulting work using various methods, including the reports pursuant to the Article 3, Paragraph 4. [sic]
2) "B" shall respond to requests made by "A" to attach "B's" review opinions on particular matters to "A's" work reports.
3) Both "A" and "B" shall provide mutual cooperation to carry out the work smoothly, and one party shall actively cooperate if the other party requests provision of overall data or services required to perform the work activities.
4) During the term of the Agreement and even after the Agreement has lapsed, "B" shall protect "A's" confidential information acquired or exchanged in the process of the consulting services and shall not use such information for other purposes without prior approval from "A", nor shall disclose or leak out the information to third parties.
5) "B" shall not bear responsibility if "A's" information on the Internet Web pages is leaked, destroyed, or lost by hacking, etc. by a third party without "B's" intention or substantial culpability.
However, in such cases, "B" shall provide "A" with a written statement that there is no intention or substantial culpability on "B's" part, along with evidencing materials.
6) "B" shall indemnify "A" for the damages suffered by "A" due to "B's" violation of Paragraph 4 and/or 5 above.

**Article 10    Termination of the Agreement due to Non-Fulfillment**
1) The termination of the Agreement due to non-fulfillment of the terms and conditions of the Agreement by either party shall take effect if one party notifies the other party of the intention to terminate the Agreement and the other party does not fulfill the Agreement within one month.
2) The termination of the Agreement set forth in the previous Paragraph shall not affect claims for damages.

**Article 11    Custody of the Agreement**
The Agreement shall be prepared in duplicate and "A" and "B" shall each retain one copy.

**Article 13 [sic] Application of Legal Principle of Authorization**
Matters not covered explicitly by this Agreement shall follow the Legal Principle of

4

Authorization and relevant laws and regulations of civil law.

**Article 12 [sic]  Court of Jurisdiction**

The court of jurisdiction for disputes in relation to this Agreement shall be the court of jurisdiction where "A's" head office is located.

However, in case there is no actual benefit in bringing the suit in the location of "A", the suit can be filed in the court of jurisdiction where "B" resides.

Authorizing Party ("A"):   Company Name: Cresyn Co., Ltd.
                          Business Registration Number: 212-81-20819
                          CEO: NAH Jin   (seal)

Authorized Party ("B"):   ID No. : 217190104
Address:                  683 Montara Terrace Sunnyvale, CA 94085 USA
Name:                     Paul Devine   (seal)